### HERNANDEZ, Collector of Internal Revenue, v. CHARLES ILFELD CO.

#### No. 787.

Circuit Court of Appeals, Tenth Circuit.

Oct. 10, 1933.

Wm. J. Barker, U. S. Atty., of Santa Fé, N. M., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and D. A. Taylor and Warren W. Cole, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for appellant.

A. T. Hannett, of Albuquerque, N. M., for appellee.

John G. Buchanan, Paul G. Rodewald, David B. Buerger, and Smith, Buchanan, Scott & Gordon, all of Pittsburgh, Pa., and Robert H. Montgomery, of New York City, amici curiæ.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

In an involved and somewhat confusing petition for rehearing, appellee asserts that it is entitled to a double deduction for the losses of its subsidiaries because of regulations which were not set out in either brief or discussed in written or oral argument, and the court is chided for "ignoring" such regulations. Counsel for other litigants have volunteered to act as friends of the court, all asserting the legal right to deduct losses a second time, and reminding us that if there is a crevice in the dike by which the actual income of affiliated corporations escapes taxation, it is not the function of the judiciary to stop the leak. This widespread and acute interest indicates that the crevice is not of insignificant dimension.

But in all this welter of briefs, no one has suggested any reason why a double credit for the same loss should be allowed, except the inept analogy that an individual stockholder is entitled to his capital loss on sale of his stock without diminution for corporate losses, —an analogy which overlooks the controlling circumstance that the individual's personal

tax was not reduced through the years by the losses of his corporation. Counsel for appellee and amici curiæ take the bald position that, right or wrong, the Treasury Department has so enacted.

Counsel on both sides agree that the case is ruled by Tr. Reg. 75, issued pursuant to section 141 (b) of the Revenue Act of 1928, 26 USCA § 2141 (b). We therefore assume, without deciding, that Congress may delegate to the Commissioner the power to legislate and to contract on the troublesome problem of affiliated corporations. An examination of these technical regulations serves to strengthen our conclusion that the Treasury Department intended that losses actually realized from the operation and dissolution of a subsidiary should be deducted once, but not twice, from the income of the parent. Whether, as a matter of accounting, it was intended that such losses or gains should be treated as occurring within or without the consolidated return period is not so clear. The same honest and wholesome result is achieved by either method; the point becomes important only in light of appellee's contention that if the loss is treated as occurring after the consolidated period, it may be taken a second time.

Section 37 (a), Tr. Reg. 75, provides that neither gain nor loss shall be recognized upon a distribution in cancellation of stock made during a consolidated return period. Section 37 (b) provides that a distribution made after such period shall be treated as a sale of stock and adjustments made as provided in Articles 34, 35, and 36. The controversy presented to the court upon the first hearing centered about the question of which of these sections governed. Arguendo, we said that the affiliation was terminated by a liquidating sale of the assets of a subsidiary to an outsider accompanied, as a part of the same transaction, by a distribution of the proceeds. The decision however was distinctly predicated upon the point that whenever it was considered as occurring, a taxable gain or loss resulted.

Counsel for appellee, upon the assumption that we held that section 37 (b) was applicable, now directs our attention to 34 (c) (2) of the Regulations, which provides for a deduction from the aggregate bases of the stock as determined by 34 (c) (1) the aggregate of the losses sustained during each of the consolidated return periods "(including only the taxable year 1929 and subsequent taxable years)." The argument is made that the Commissioner thereby is forbidden to take into account losses prior to 1929. That is to say, counsel contend that operating losses prior to 1929 may be twice deducted by a taxpayer exercising the option given by section 141 (a) of the Revenue Act of 1928, 26 USCA § 2141 (a)— an unjust and anomalous result not lightly to be imputed to the Treasury Department, and the mischiefs of which are sufficient to "tip the scales when arguments are nicely balanced," to borrow the forceful language of Justice Cardozo in Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 570, 76 L. Ed. 1128.

But even upon appellee's assumption, the flaw in its case is that section 34 (c) (2) does not stand alone; it is a part of a section providing for an intricate determination and adjustment of the shares of stock of a subsidiary immediately prior to the sale, a determination and adjustment which doubtless was intended to eliminate the apparent anomaly of the parenthetical clause in 34 (c) (2). At any rate, if Article 37 (b) is applicable the Commissioner must first determine and adjust the bases of the stock immediately prior to the sale. A strong burden was cast upon appellee to prove that the Commissioner erred in determining and adjusting the bases of the stock as required by section 34. Lucas v. Kansas City Structural Steel Co., 281 U. S. 264, 50 S. Ct. 263, 74 L. Ed. 848. There is no finding by the trial court as to the adjusted bases of the stock, nor any conclusion that the Commissioner erred in that regard. Without such proof, the Commissioner's determination cannot be set aside.

Counsel for amici curiæ argue that, irrespective of the regulations, earlier operating losses may not be deducted from capital losses sustained on final liquidation. We are cited to cases where courts have properly drawn a distinction between capital losses and operating losses. That there is such a distinction cannot be gainsaid; and it may also be admitted that mental confusion follows in the wake of mingling them. But this confusion is injected into the equation by the statutes which require capital gain to be accounted for as taxable income and permit capital losses to be deducted from operating income. Where operating losses impair the capital of corporations, as here, they are capital losses in the sense that they represent losses of the capital investment. If a corporation's capital was originally $100,000 and it was entirely dissipated in operating losses for which deductions were made through the years, it can hardly be said that the entire loss was a capital loss realized during the year of liquidation. Neither the Supreme Court of the United States nor the Circuit Court of Appeals for the

Fourth Circuit was beguiled into a double allowance for the same loss by arguments predicated on nomenclature. Burnet v. Aluminum Goods Mfg. Co., 287 U. S. 544, 53 S. Ct. 227, 77 L. Ed. 484; Burnet v. Riggs National Bank (C. C. A. 4) 57 F.(2d) 980.

■ In his brief in opposition to the rehearing, the Collector renews his insistence that Article 37 (a) exempts from taxation any profits, and denies deduction for any losses, that grow out of the liquidation of a subsidiary. The brief refers us however to an enlightening and authoritative article by the Hon. Andrew W. Mellon, the Secretary of the Treasury who approved Regulation 75, published in the March, 1929, issue of The National Income Tax Magazine (Vol. VII, 3, pp. 105, 106). Mr. Mellon classifies dissolutions of subsidiaries into three types, the third type being "where it is decided to abandon the business and close out the affairs of the subsidiary," which is clearly the case here. He then says "any gain should be taxed and any loss allowed as a deduction in the case of a dissolution of the third type." He proceeds: "Inasmuch as it would be impossible to prescribe a rule which would distinguish the types and which would be susceptible of sound administration, and in view of the fact that the benefit of losses which are properly allowable are not denied if the loss is realized before the dissolution or if the subsidiary is not a member of the group at the time of the dissolution, it was concluded that the rule adopted in the Regulations, treating all dissolutions as intercompany transactions, was the safest and best and would prove the most satisfactory."

From this it appears that the Treasury Department construes the Regulations as permitting a parent to deduct losses realized on the winding up of a subsidiary, no matter whether the loss is treated as realized before or after dissolution. Such interpretation of the Department is in accord with the common sense view taken of the matter by the Supreme Court in Burnet v. Aluminum Goods Mfg. Co., 287 U. S. 544, 53 S. Ct. 227, 77 L. Ed. 484, and with our first opinion. It is also in accord with the statement of government counsel to the Ninth Circuit Court of Appeals in McLaughlin v. Pacific Lumber Company, 66 F.(2d) 895, 897, that "the present trend of decisions, both in the Board of Tax Appeals and in the courts" is in favor of permitting such deductions.

As so interpreted, section 37 (a) does not refer to the actual gain or loss sustained when the assets of a subsidiary are disposed of, but only to the distribution by which the shares are canceled or redeemed. Of course if the gain or loss on the sale of the assets is accounted for in the consolidated return, it should not again be taken into account when the entry is made offsetting the distribution by a cancellation of the shares. If such is the administrative construction of the Regulation, it does no violence to the settled rule that affiliated corporations must account for gains, and are entitled to deduct losses, that inure to the group. But under such construction, a loss on liquidation of a subsidiary is a proper deduction, as we held.

■ But all the roads lead to Rome. Whether the loss is treated as occurring during or after a consolidated return period, it is an actual realized loss that should be taken into account; but we are not persuaded by the multitude of counsel that the statute and regulations contemplate it should be taken twice.

The petition for rehearing is therefore denied.