## COMMISSIONER OF INTERNAL REVENUE v. EMERSON CAREY FIBRE PRODUCTS CO. et al.

### No. 820.

Circuit Court of Appeals, Tenth Circuit.

May 21, 1934.

Norman D. Keller, Sp. Asst. to Atty. Gen. (Pat Malloy, Asst. Atty. Gen., Sewall Key and John H. McEvers, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and Chester A. Gwinn, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for petitioner.

Earl W. Shinn, of Washington, D. C. (H. B. McCawley, of Washington, D. C., on the brief), for respondents.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals involving income taxes of respondents for the year 1923.

Members of the Carey family owned the capital stock of the Emerson Carey Fibre Products Company and The Carey Salt Company, Kansas corporations with their principal place of business at Hutchinson, Kansas. The assets of a job printing plant were acquired by the Carey family by assignment in lieu of foreclosure proceedings under a mortgage held by them. They organized a Kansas corporation known as the Gazette Printing Company in the latter part of 1916, and in exchange for its entire capital stock they transferred to it the assets of the printing plant. The total cost of the stock of the Gazette Printing Company at the time it was acquired by the Carey family was $18,766.50.

At all times in question the Emerson Carey Fibre Products Company, The Carey Salt Company and the Gazette Printing Company were affiliated corporations for the purposes of the Revenue Law, because the stock of all of them was owned by the Carey family. Revenue Act of 1918, § 240 (b) (2), 40 Stat. 1082, and Revenue Act of 1921, § 240 (c) (2), 42 Stat. 260. For the years 1917 to 1923 inclusive the Emerson Carey Fibre Products Company, The Carey Salt Company, and the Gazette Printing Company filed consolidated returns.

The Gazette Printing Company carried on a job printing business during the years 1917 to 1923. It lost money each year, the total loss being $138,812.88. The loss sustained each year was reflected in the consolidated balance sheet of the affiliated group, and was taken as a deduction in arriving at the taxable income of the consolidated group.

During the time the Gazette Printing Company was being operated The Carey Salt Company loaned it $152,680.45. The salt company received notes for $87,192.43, and it carried $65,488.02 on its books as an account receivable.

In 1923 the Gazette Printing Company was liquidated, and its assets were sold by the Carey interests to one Burns for $25,000.00. The cost of the assets as of the date of sale was $54,474.67.

The Carey Salt Company charged off on its books as a bad debt at the end of 1923 the sum of $152,680.45 which it had advanced to the printing company. The Commissioner disallowed that sum as a deduction from income of the affiliated companies for the year 1923. Upon appeal the Board of Tax Appeals reduced that amount by $25,000.00, the amount received on sale of the assets of the printing company and which it said should have been used to reduce its indebtedness, and allowed a deduction of $127,680.45.

The Board of Tax Appeals found that when the Gazette Company was liquidated its assets were received and sold by the Carey interests for $25,000.00, $6,500.00 of which was paid in cash and a promissory note given for the balance. It does not appear who in fact received this consideration, members of the Carey family or the salt company, but clearly the salt company as a creditor had a prior claim to the $25,000.00 over the stockholders of the Gazette company. It still has that claim and can recover the $25,000.00 from the stockholders, if it was received by them. There is no proof that they were or are insolvent, and there is no proof that there were other creditors of the Gazette Printing Company, nor that its claim to those assets was for any cause or in any respect a bad debt. We therefore agree with the Board that on the record the advancements made by the salt company should be credited with $25,-000.00.

It thus appears that the net loss of the salt company on its advancements to the printing company, after deducting the $25,-000.00, is less than the net operating losses of the printing company deducted in consolidated returns during the years 1917 to 1923. This presents by analogy the same practical situation with which we dealt in Hernandez v. Charles Ilfeld Co., 66 F.(2d) 236, Id., 67 F.(2d) 236, affirmed by the Supreme Court, 54 S. Ct. 596, 78 L. Ed. ——. In that case the parent corporation made consolidated returns over a period of years with subsidiary corporations, the stock of which it owned. In those returns the gains and losses of each subsidiary were taken into account. The subsidiary corporations sold their assets to outsiders, and after paying certain debts the balance was paid to the parent corporation, and they were dissolved. The combined operating losses of the two subsidiaries exceeded the investment loss claimed by the parent corporation as a result of the liquidation of the subsidiaries. It was held in that case that the claimed investment losses were a duplication of the operating losses shown in the consolidated returns, and should not be allowed.

As stated, in the Ilfield Case the operating losses exceeded those sustained by liquidation of the subsidiaries. In this case also the net loss of the salt company upon liquidation of the printing company was less than the operating losses that had been deducted in the consolidated returns.

We see no difference between the situation in the Ilfeld Case where the stock of the subsidiaries was owned by a parent corporation and the instant case where the stock in several corporations is owned by the same interests, the Carey family, that renders the Ilfeld Case inapplicable.

Reversed and remanded.