**DENTON & ANDERSON COMPANY, and affiliated companies, The Taylor-Winfield Corporation and The Warren City Tank & Boiler Company, Plaintiffs,**

v.

**Thomas Giles KAVANAGH, Administrator of the Estate of Giles Kavanagh, Deceased, Defendant.**

No. 11550.

United States District Court
E. D. Michigan, S. D.
June 30, 1958.

Hugh G. Allerton, Highland Park, Mich., H. H. Hoppe and James W. Frey, Hoppe, Day & Ford, Warren, Ohio, for plaintiffs.

Andrew D. Sharpe, Fred J. Neuland, Dept. of Justice, Washington, D. C., Fred W. Kaess, U. S. Atty., John L. Owen, Asst. U. S. Atty., Detroit, Mich., for defendant.

FREEMAN, District Judge.

This is a taxpayer's suit for a refund of moneys paid in accordance with an allegedly illegal assessment of the Commissioner of Internal Revenue. The case was tried and submitted to the court on stipulated facts and issues. Oral arguments were had and briefs were filed by both parties.

This suit arises from the Commissioner's assessment of taxes on income from the operation of the plaintiff corporations during the years 1942 to 1945. Briefly summarized, the transactions giving rise to the present controversy and pertinent facts are as follows:

At all relevant times, Denton & Anderson Company (hereinafter called D & A) was the owner of 96% of the outstanding stock of Taylor-Winfield Corporation (hereinafter called T-W) and T-W was the owner of all the outstanding stock of Warren City Tank & Boiler Company (hereinafter called Warren City), which stock had been purchased by T-W on December 1, 1941, for the sum of $327,-934.28. In 1941 and 1943, D & A advanced a total of $79,125.53 to Warren City as working capital.

During the taxable years involved in this suit, 1942 to 1945, inclusive, the plaintiff corporations filed consolidated income and excess profits tax returns with Giles Kavanagh, Collector of Internal Revenue for the District of Michigan, at Detroit, and paid taxes computed on these returns. The Commissioner, after an audit of these returns, recomputed the taxes due and owing for such years and filed a deficiency assessment. The plaintiff corporations paid the taxes allegedly due in accordance with this deficiency assessment. Timely claims for refund were filed which were disallowed by the Commissioner within two years prior to the date of instituting this action.

The issues in this suit involve the treatment to be afforded certain transactions entered into by plaintiff corporations resulting in losses to the affiliated group.

On February 13, 1942, Warren City procured a V-loan in the amount of $2,000,000 from the National Bank of Detroit (hereinafter called the Bank),

which loan was guaranteed by the United States Navy and T-W. During the taxable year 1942, Warren City sustained a net loss of $1,415,380.97. To obtain additional working capital and to pay the $2,000,000 V-loan previously obtained, Warren City procured, on February 15, 1943, another V-loan from the Bank in the amount of $4,000,000. This loan was also guaranteed by the United States Navy and T-W. From the proceeds of this loan, the $2,000,000 loan was discharged. On July 9, 1943, D & A, T-W, Warren City, the United States Navy, the National Bank of Detroit, and the Federal Reserve Bank of Chicago entered into an agreement known as the "Six Party Agreement" whereby, in the words of the stipulation of facts, Paragraph 13:

> "(a) D & A became a guarantor on such $4,000,000 V-loan and agreed to pay to Bank 80% of its net annual earnings on such V-loan until it was paid in full; provided, however, that such payments were not to exceed the savings effected by D & A in respect to its income and excess profits taxes through the consolidation of its returns with those of T-W and Warren City, and
>
> "(b) T-W remained a guarantor on such $4,000,000 V-loan and, in addition, agreed to pay to Bank 75% of its annual net earnings until such V-loan was paid in full."

In accordance with this Six Party Agreement, D & A paid to the Bank in the years 1943–5 a total of $96,213.77 and T-W paid to the Bank during the same years $473,569.88, a grand total of $569,783.65, as guaranty payments.

In the consolidated income and excess profits tax returns for the years 1943–5, D & A and T-W deducted the amount of their respective guaranty payments in determining their respective net incomes for each of the years involved.

During the years 1943–5, Warren City suffered an aggregate net operating loss of $824,410.23, which was availed of by D & A and T-W, collectively, to the extent of $779,581.64 as an off-set against their

taxable net incomes for 1942, 1943 and 1944 through the filing of consolidated income and excess profits tax returns.

In his audit of the consolidated income and excess profits tax returns of plaintiff corporations for the years 1942–4, the Commissioner determined that D & A and T-W were not entitled to a deduction of the guaranty payments to the Bank in the years of payment and that these payments were to be treated by D & A and T-W in the same manner as advances to or investments in the affiliated subsidiary, Warren City. The Commissioner also disallowed certain other deductions that had been taken by the affiliated group that are not pertinent to this suit.

In 1944 the major portion of the assets of Warren City were sold, and by December 30, 1945, Warren City had been liquidated and dissolved. The proceeds of the liquidation of Warren City were not sufficient to repay either D & A or T-W for any part of the advances or stock investments made by them in Warren City nor were they sufficient to repay them for any part of the guaranty payments made.

After auditing the consolidated income and excess profits tax returns for the year 1945, the Commissioner determined that plaintiff corporations were entitled to deduct the total aggregate bases of D & A's and T-W's investment in Warren City under the laws and regulations pertinent to deductions on consolidated income and excess profits returns in the year of dissolution of a subsidiary affiliated corporation. The Commissioner determined that this investment basis should be composed of the sum of the stock investment, advances and the guaranty payments to the Bank, which the Commissioner had disallowed as deductions in his audit of the consolidated returns for 1942–4. However, the Commissioner then determined that, before this total investment basis could be allowed as a deduction from income for 1945, it would be necessary to adjust the basis in order to avoid a double deduction. To accomplish this purpose, the Commissioner subtracted the net loss

of Warren City for the years 1942–5, availed of by D & A and T-W, equalling $779,581.64, from the total aggregate investment of $976,843.46 and allowed a deduction of $197,261.82 to be apportioned between D & A and T-W on the basis of their respective investments in Warren City.

It is this recomputation of the Commissioner that gives rise to the issues involved in this refund suit.

At the trial, counsel stipulated to the legal issues and that the court's determination of these issues would govern the outcome of the suit. The issues as so stipulated are:

"1. Were the losses in 1943, 1944 and 1945 resulting from the guaranty payments of D & A and T-W to Bank fully deductible, as Petitioners contend, or were such losses subject to adjustment under Sections 23.40 and 33.40 of Regulations 104 and 110, respectively, of the Commissioner of Internal Revenue, as the Defendant contends?

"2. In the event it should be determined that the losses resulting from such guaranty payments were subject to adjustment under Sections 23.40 and 33.40 of Regulations 104 and 110, respectively, of the Commissioner of Internal Revenue—

"(a) were such Regulations properly applied by the Commissioner of Internal Revenue in reducing the aggregate losses of D & A and T-W resulting from D & A's advances to Warren City, T-W's investment in the stock of Warren City and their respective guaranty payments, by the net operating losses of Warren City availed of by D & A and T-W, without regard to how much of such net operating losses were availed of by D & A and how much of such net operating losses were availed of by T-W, all as set forth in paragraph 23 of the Stipulation of Facts, or

"(b) was the Commissioner of Internal Revenue required, in determining the amount of such losses which were deductible in 1944 and 1945, to determine the portion of the net operating losses of Warren City availed of by D & A and T-W, separately, and to reduce the separate losses of D & A and T-W, referred to in part (a) hereof, by the amount of such net operating losses availed of by each?"

### First Issue

Under the first stipulated issue, plaintiff taxpayers contend, in essence, that the guaranty payments D & A and T-W made, under the Six Party Agreement, were deductible from current income in the year in which they were made, either as losses sustained by corporations under § 23(f), Internal Revenue Code of 1939, 26 U.S.C. 1939 Code, § 23(f), or as bad debts under § 23(k), I.R.C.1939, 26 U.S.C. 1939 Code, § 23(k), and that the Commissioner's regulations make provision for such a deduction, since the last paragraph of § 23.31(d) of Treasury Regulations 104 authorizes the deduction of the guaranty payments in full. The last paragraph of § 23.31(d) provides that "Intercompany profits and losses which have been realized by the group through final transactions with persons other than members of the group * * * shall not be eliminated" from the profits and losses of the affiliated corporations, in computing the taxable income of the affiliated group. Plaintiffs argue that this provision applies to the guaranty payments made to the Bank by D & A and T-W, since, if such payments are intercompany transactions, then the loss realized by D & A and T-W was realized through a final transaction with a person other than a member of the group, i. e., the Bank. Therefore, plaintiffs contend that there is no necessity for any application of § 23.40, Treas. Reg. 104, governing the treatment to be afforded to bad debts and worthless obligations of affiliated corporations during a consolidated return period, that the history and development of § 23.40 as seen in certain reported cases shows that this section was not intended to

apply to guaranty payments made by an affiliated corporation on a debt of another affiliated corporation, and that such treatment will not result in any double deduction to any member of the affiliated group as contended by defendant.

In regard to the first issue, defendant contends that the Internal Revenue Code of 1939 and the Commissioner's regulations under the Code must be interpreted, where there is a question as to the method of their application to a given case, in such a manner as to avoid giving the taxpayer a double deduction. Defendant argues that to allow plaintiffs to take these guaranty payments, as deductions against current income, in the year in which they were made, will enable the taxpayer to take a double deduction, since D & A and T-W had already received the benefit of one deduction of the same loss when they were allowed to set-off the net operating losses of Warren City against their current income in their consolidated returns in the taxable years 1942–5. Defendant claims that these net operating losses of Warren City consisted in part of the money loaned by the Bank to Warren City and that, when the guaranty payments were made by D & A and T-W to the Bank, D & A and T-W became principal creditors of Warren City as if they had made a loan or advance directly to Warren City. Thus, defendant argues, to allow D & A and T-W to deduct these guaranty payments in the year in which they were made would be to allow a deduction for losses that D & A and T-W had previously or concurrently deducted by off-setting the net operating loss of Warren City against the current income of D & A and T-W in their consolidated returns during the period in which such returns were filed.

Defendant claims that these guaranty payments must be treated in accordance with those provisions of the Commissioner's regulations applicable to advances by one affiliate to another affiliate during a consolidated return period and, therefore, states that § 23.40, Treas.Reg. 104, should be applied instead of the last paragraph of § 23.31(d), as urged by plaintiffs. In support of such claim, defendant refers to § 23.31(d) which provides for the manner in which the respective net incomes of affiliated corporations is to be computed "except as otherwise provided in these regulations" and argues that the adjustments required by § 23.40 with respect to the deductibility of bad debts or losses resulting from worthlessness of obligations of a member of an affiliated group which was liquidated during the taxable year, necessarily come within the exception in § 23.-31(d), namely, "except as otherwise provided in these regulations."

Defendant points out that § 23.40(a) provides that no deduction shall be allowed during a consolidated return period to any member of an affiliated group on account of the worthlessness, in whole or in part, of any obligation of any other corporation which was a member of the group, "except as a loss resulting from a bona fide termination of the business and operation of the obligated affiliate * * *." Both parties agree that if § 23.40 applies, as defendant contends, then the amount of the losses ultimately to be deducted shall be computed in accordance with §§ 23.35 and 23.34, Treas. Reg. 104. These sections direct that a sum, equal to the aggregate net operating losses of the obligated affiliate previously availed of by the affiliated group during the consolidated return period, shall be eliminated from the losses deferred under § 23.40.

Thus, defendant contends that, unless § 23.40 is applied and the net operating loss of Warren City, previously availed of by the group, is deducted from the guaranty payments, a double deduction will occur and plaintiffs will gain a tax advantage contrary to the intent of the I.R.C.1939, and the cases decided thereunder.

The Internal Revenue Code of 1939 makes provision for the filing of consolidated income and excess profits tax returns and for the manner of computation of taxes levied on the affiliated corporations filing such returns in § 141, I.R.C.1939, 26 U.S.C. 1939 Code, § 141.

This section provides that the privilege of filing such returns, in lieu of separate returns, is extended to any group of corporations falling within the statutory definition of an "affiliated group," provided that such corporations shall pay an additional 2% surtax. The Code provides that any corporate group filing consolidated returns shall be deemed to have consented to abide by the regulations of the Secretary of the Treasury governing the computation, assessment, collection and adjustment of taxes due on the income reported in such returns. The Code does not furnish any detailed directions for the manner in which taxes on income reported in consolidated returns shall be computed, but merely authorizes the Secretary of the Treasury to:

"* * * prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income-and excess-profits-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability." 26 U.S.C. 1939 Code, § 141(b).

In accordance with the authority granted him in § 141, 26 U.S.C. 1939 Code, supra, the Secretary of the Treasury promulgated Treasury Regulation 104, governing the manner and method of computation of taxes on income of affiliated groups filing consolidated returns. Since the 1939 Code does not prescribe the method of computation of such taxes, this court must follow any applicable regulations promulgated by the Secretary of the Treasury.

The parties to this suit base their contentions on the applicability of §§ 23.31(d) and 23.40, Treas.Reg. 104, to the facts of this case.

The contention of plaintiffs that the provisions of § 23.31(d), Treas.Reg. 104, allow a full deduction in the year of payment of any guaranty payments made by D & A and T-W to the Bank rests on a literal reading of that section, which provides, in pertinent part:

"§ 23.31

"*Bases of Tax Computation.*

\* \* \* \* \* \*

"(d) *Computations—Years Beginning After December 31, 1940.* In the case of affiliated corporations which make, or are required to make, a consolidated return for a taxable year beginning after December 31, 1940, and except as otherwise provided in these regulations \* \* \*

"Intercompany profits and losses which have been realized by the group through final transactions with persons other than members of the group, and intercompany transactions which do not affect the consolidated taxable net income shall not be eliminated \* \* \*"

It is true that the words of this section, when read apart from the rest of Treas.Reg. 104, and without regard to the considerable body of case authority holding that these regulations should be construed so as to avoid granting a taxpayer a double deduction, might be held to apply to the facts of this case. However, such a holding would allow the plaintiffs D & A and T-W to realize a double deduction.

Examinations of the cases construing § 141, I.R.C.1939, and precedent legislation of a substantially similar nature, indicates the courts have held that there is no provision in the Code allowing a taxpayer to twice deduct a loss for the same diminution of assets and no such legislative intent can be imputed.

In Ilfeld Co. v. Hernandez, 1933, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127, the United States Supreme Court considered a case where a parent corporation, during the years it had filed consolidated returns, was allowed to deduct the net operating losses of a subsidiary to an

extent in excess of the parent's stock investment and advances to the subsidiary. The court held that the parent corporation, on dissolution of the subsidiary, would not be allowed to take a further deduction, for the parent's lost stock investment and advances in and to the subsidiary, since such a deduction would be a double deduction.

The court said:

"The allowance claimed would permit petitioner twice to use the subsidiaries' losses for the reduction of its taxable income. By means of the consolidated returns in earlier years it was enabled to deduct them. And now it claims for 1929 deductions for diminution of assets resulting from the same losses. If allowed, this would be the practical equivalent of double deduction. In the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of taxpayers will not be attributed to lawmakers. Cf. Burnet v. Aluminum Goods Mfg. Co., 287 U.S. 544, 551, 53 S.Ct. 227, 77 L.Ed. 484; United States v. Ludey, 274 U.S. 295, 301, 47 S.Ct. 608, 71 L.Ed. 1054. There is nothing in the Act that purports to authorize double deduction of losses or in the regulations to suggest that the commissioner construed any of its provisions to empower him to prescribe a regulation that would permit consolidated returns to be made on the basis now claimed by petitioner." 292 U.S. 62, at page 68, 54 S.Ct. 596, at page 598.

This decision has been followed in subsequent cases. McLaughlin v. Pacific Lumber Co., 1934, 293 U.S. 351, 55 S.Ct. 219, 79 L.Ed. 423; United States v. Lakewood Engineering Co., 6 Cir., 1934, 70 F.2d 887; Greif Cooperage Corp. v. Commissioner, 3 Cir., 1936, 85 F.2d 365, affirming 31 B.T.A. 374.

Under these holdings, it becomes the duty of this court to examine the facts of this case to ascertain whether or not a double deduction will occur if § 23.31

(d) is applied to the facts in the manner contended for by the petitioners.

Plaintiffs concede that the allowance of a bad debt deduction on account of the advances to Warren City by D & A or the stock investment loss on the part of T-W, would result in D & A and T-W receiving the benefit of a double deduction.

Both parties agree that a double deduction occurs when the taxpayer is twice allowed a deduction for the same diminution of assets constituting the deductible loss. Ilfeld Co. v. Hernandez, supra. Applying such a definition to the facts of this case, it is the opinion of this court that a double deduction would be allowed if the contention of the plaintiffs is followed.

It is true, as plaintiffs argue, that the guaranty payments to the Bank were made as a consequence of a legal obligation entered into by D & A and T-W when the Six Party Agreement was made. It is also true that the net operating losses of Warren City were financed, to a large extent, by the loan of the Bank to Warren City. However, to accept the contention of plaintiffs that because the guaranty payments were made to the Bank by D & A and T-W in obedience to a legal obligation and because the loan was a separate source of the net operating loss deductions, therefore, the allowance of the guaranty payments as a deduction would not constitute a second deduction for the same diminution of assets, is to ignore the realities of the situation. The Bank loaned money to Warren City. Warren City lost the money loaned in the course of its operations and D & A and T-W took advantage of a deduction for these net operating losses of Warren City in the consolidated returns filed for the years 1942-5. Until the guaranty payments were made to the Bank, D & A and T-W had not lost any investment in Warren City, other than advances and stock investments. When the guaranty payments were made to the Bank, D & A and T-W became the owners of separate causes of action against Warren City by operation of

the doctrine of equitable subordination and these payments, therefore, created an investment of D & A and T-W in Warren City. The only essential difference between these guaranty payments and an advance to Warren City is that, in the case of an advance, the loss of the money advanced and invested in the subsidiary would not occur prior to the time the advance is made, while, in the case of these guaranty payments, however, the money paid in accordance with the guaranty agreement had been lost by the subsidiary prior to the date of payment of the guaranty. Both parties agree that, when an advance is made to a subsidiary, no loss may be deducted until the year of dissolution and then only after adjustments have been made as prescribed in § 23.40, Treas.Reg. 104.[1] The reason for such a procedure is to avoid allowing the affiliated group a deduction for net operating losses financed by the advances and then a loss deduction of the advances themselves. § 23.40 avoids this result by directing that all net operating losses of the dissolving affiliated corporation previously availed of by the affiliated group shall be deducted from the amount of the advances or investments made by members of the affiliated group to the dissolving affiliate, in the year of dissolution, and that only the remaining sum, representing advances made, for which no previous deduction has been allowed, shall be permitted. Thus, if § 23.40 is followed, no double deduction is allowed in the case of advances under such circum-

stances. There is no rational basis for any different treatment of guaranty payments. In effect, the guaranty payments to the Bank constituted an investment in Warren City, and should be treated in the same manner as stock investments and advances. D & A and T-W, because of the guaranty payments, now stand in the shoes of the principal creditor, the Bank, and should be treated as though they had loaned money directly to Warren City. If the Bank had loaned this money directly to D & A and T-W and they in turn had loaned it to Warren City, such a transaction would be considered an advance to Warren City and would be subject to the adjustments prescribed under § 23.40. There is no reason why D & A and T-W should be entitled to any different treatment of their actual losses because they have entered this transaction as guarantors and not as principal debtors. It is clear to the court that the treatment contended for by plaintiffs would result in allowing double deductions to D & A and T-W, because there is no provision under such treatment for elimination of the net operating losses, previously availed of, by the corporate group.

Plaintiffs state that § 23.40 cannot be applied to the facts of this case because of the language of § 23.31(d), stating that "intercompany profits and losses which have been realized by the group through final transactions with persons other than members of the group * * * shall not be eliminated" from the

---

1. "(a) *Deduction During Consolidated Return Period.*

"No deduction shall be allowed during a consolidated return period to any member of the affiliated group on account of worthlessness in whole or in part of any obligation (including accounts receivable, bonds, notes, debts, and claims of whatsoever nature) of any other corporation which was a member of the group as of the last day of the taxable year or which was liquidated by the group during such year, except as a loss resulting from a bona fide termination of the business and operations of such other corporation, whether in liquidation or otherwise, in which case the loss will be

computed subject to the adjustments specified in section 23.35, * * *.

"(b) *Limitation of Allowance After Consolidated Return Period.*

"With respect to obligations (including accounts receivable) of a member of an affiliated group acquired in any way by another member of the group prior to or during any taxable year subsequent to 1928 for which a consolidated income or excess profits tax return was filed, the adjustments prescribed with respect to the allowance of losses upon the sale of bonds shall be applicable to the allowance of any bad debt deduction for any period subsequent to the consolidated return period. (See section 23.35.)"

computation of the net income of the consolidated group. Ignoring all other considerations, such language, literally applied, might justify this contention. However, in view of the reasoning involved and conclusions reached by the courts in the above-cited cases and since the Secretary must be assumed to have drafted the Regulations so as to avoid the granting of double deductions, it seems to this court that § 23.40 is intended to apply to the facts of the instant case. § 23.40 constitutes a bar to the allowance of any deduction "on account of worthlessness in whole or in part of any obligation * * * of any other corporation" which was a member of the affiliated group, except as a loss resulting from a bona fide termination of the business and operations of such other corporation. This language is applicable to these guaranty transactions. D & A and T-W made the guaranty payments because of the inability of Warren City to meet its primary obligation to repay the Bank loan. The loss thus resulted directly from a worthless obligation of an affiliated corporation. If D & A and T-W had loaned this money directly to Warren City as an advance and Warren City had become insolvent and defaulted on its obligation to repay such an advance, the resulting loss to D & A and T-W would have to be treated in accordance with the procedure prescribed under § 23.40. The guaranty payments when made became, in effect, advances and should be treated in the same manner. Such guaranty payments constituted an investment in the Warren City affiliate and the inability of Warren City to repay either the principal creditor, the Bank, or the sureties, D & A and T-W, is the cause of the loss sustained by D & A and T-W. The obligation of Warren City to repay D & A and T-W the guaranty payments became worthless and could only be deducted to the extent and in the manner provided by § 23.40 so as to avoid any double deductions.

Plaintiffs argue that the history of § 23.40 shows it was not intended to apply to the facts of this case and point out that this section was promulgated after the holdings of the United States Supreme Court in Burnet v. Aluminum Goods Mfg. Co., 287 U.S. 544, 53 S.Ct. 227, 77 L.Ed. 484, and Ilfeld Co. v. Hernandez, supra. In the Burnet case, the Court held that the Commissioner of Internal Revenue must ultimately allow deductions for losses resulting from intercompany transactions. In Ilfeld, the Court held that such deductions must be allowed, as stated in the Burnet case, but that they could be allowed only insofar as they did not constitute double deductions. Prior to the holdings in these cases, it had been the policy of the Commissioner to disallow any deductions resulting from intercompany transactions. Therefore, plaintiffs contend that § 23.40 was intended to cover "losses resulting from intercompany transactions" and, thus, cannot be construed to apply to the facts in the case at bar, which do not involve an intercompany transaction. This contention is not valid. The holdings in Burnet and Ilfeld, supra, involved granting ultimate recognition as deductions to losses sustained by affiliated corporations resulting from loss of their investments in other affiliated corporations. If, as plaintiffs contend, § 23.40 was designed to prescribe the procedure governing ultimate recognition of lost investments in affiliated corporations as deductions, then it appears to this court that § 23.40 was intended to apply to the facts in the case at bar. The guaranty payments, as stated above, were, in effect, repayments of the Bank loans to Warren City and by virtue of the doctrine of equitable subordination D & A and T-W became creditors of Warren City. The ultimate effect of these guaranty payments was to make D & A and T-W investors in Warren City. Thus, it seems clear that the history of § 23.40, contrary to plaintiffs' contention, shows that it was intended to apply to situations similar to and such as those in the case at bar.

For the above reasons, this court holds that D & A and T-W should not be allowed to deduct the guaranty payments

made by them to the National Bank of Detroit in accordance with the Six Party Agreement in the years in which the payments were made, but, rather, that any allowable deductions resulting from such payments must be computed in accordance with the provisions of § 23.40, Treas.Reg. 104, and be deferred until the year of cessation of business and operations of the affiliated corporation, Warren City, on whose behalf such payments were made.

## Second Issue

Since the court has decided the first issue in this case in favor of the government, it is necessary to determine, under the second stipulated issue, whether the Commissioner properly applied the net operating losses of Warren City against the combined aggregate bases of D & A and T-W's investment in Warren City, in determining the deduction allowable in 1945, the year of dissolution of Warren City.

Plaintiffs contend that the Commissioner is required by Treas.Reg. 104, and in accordance with the formula prescribed in Bush Terminal Buildings Co. v. Commissioner, 7 T.C. 793, to compute the allowable deductions of D & A and T-W separately, applying to the separate cost basis of each corporation only that proportionate amount of net operating loss of Warren City previously availed of by each separate corporation during the consolidated return period, as a set-off against the net income of each separate corporation.

Defendant argues that the Commissioner properly applied Treas.Reg. 104, by deducting the aggregate amount of the net operating losses of Warren City availed of by D & A and T-W from the combined aggregate investment bases of D & A and T-W in Warren City, and alloting the remaining allowable deductions between D & A and T-W in proportion to the respective investment bases of said corporations in Warren City. Defendant argues that this procedure is prescribed in §§ 23.40, 23.35, and 23.34 (c) (2), Treas.Reg. 104, and that the Bush Terminal case is not applicable to the facts of this case. Defendant again asserts in regard to this second issue that an application of plaintiffs' contentions will result in allowing a double deduction.

The court has determined that the provisions of § 23.40 govern the manner in which these guaranty payments are to be treated. § 23.40 provides that "no deduction shall be allowed * * * except as a loss resulting from a bona fide termination of the business and operations of such other corporation, whether in liquidation or otherwise, in which case the loss will be computed subject to the adjustments specified in section 23.35." § 23.35, insofar as pertinent, provides:

"Sec. 23.35 * * *. *Sale of Bonds or Other Obligations—Basis for Determining Gain or Loss.*

"In the case of a sale or other disposition by a corporation, which is (or has been) a member of an affiliated group which makes (or has made) a consolidated income tax return for any taxable year, of bonds or other obligations issued or incurred by another member of such group * * * and held by the selling corporation during any part of a period for which a consolidated return is made or required under the regulations, the basis of each bond or obligation, for determining the gain or loss upon such sale or other disposition, determined in accordance with the Code * * * shall be decreased (except as otherwise provided in this section) by the excess, if any, of the aggregate of the deductions computed under paragraph (c) (2) or (d) of section 23.34 over the sum of the aggregate bases of the stock of the debtor corporation as computed under paragraph (c) (1) or (d), as the case may be, held by the members of the group. * * *"

§ 23.34 provides, in pertinent part:

"Sec. 23.34 * * * *Sale of Stock—Basis for Determining Gain or Loss.*

"(c) *Sales Made During Taxable Year for Which Return Required After March 1, 1945, Which Do Not Break Affiliation; and Sales Made at Any Time Which Break Affiliation.*

"If the sale is made within a period during which the selling corporation is a member of the affiliated group, whether or not during a consolidated return period, and whether or not, as a result of such sale, the issuing corporation ceases to be a member of the group, \* \* \* the basis shall be determined as follows:

"(1) The aggregate bases of all shares of stock of the issuing corporation held by each member of the affiliated group (exclusive of the issuing corporation) immediately prior to the sale shall be determined separately for each member of the group and adjusted in accordance with the Code, \* \* \*

"(2) From the combined aggregate bases as determined in paragraph (1), there shall be deducted the sum of the losses of such issuing corporation sustained during taxable years for which consolidated income tax returns were made or were required \* \* \* after such corporation became a member of the affiliated group and prior to the sale of the stock to the extent that such losses could not have been availed of by such corporation as a net loss or net operating loss in computing its net income for such taxable years if it had made a separate return for each of such years, reduced by any losses of the issuing corporation apportioned under this section to its stock sold or otherwise disposed of in a prior transaction, disregarding any transaction between members of the affiliated group during a consolidated return period which did not constitute a partial liquidation of the issuing corporation. \* \* \*"

The government contends that the reference to "combined aggregate bases" in § 23.34(*c*) (2), supra, requires the Com-

missioner to make his computations by adding the aggregate bases of D & A and T-W and deducting from this total the net operating losses of Warren City availed of by D & A and T-W in previous taxable years when consolidated returns were filed. Defendant states that if this procedure is not followed then, on the facts of this case, a double deduction will occur.

■ In its decision of the first stipulated issue in this case, the court determined that a double deduction would occur if Warren City's net operating losses availed of by D & A and T-W were not set-off against the guaranty payments made by D & A and T-W. Inherent in the court's opinion on the first issue is the concept that affiliated corporations filing consolidated returns should be allowed to set-off net operating losses of a subsidiary affiliated corporation against the net income of the consolidated group. However, also inherent in the court's opinion is the concept that the amounts so set-off by the affiliated corporations, as losses in the years in which they were incurred, actually were deductions of sums representing losses of the affiliated corporations' investment bases in the subsidiary affiliate, allowable to the parent corporations in the year in which investments of the parent corporations were lost by the subsidiary through net operating losses. This concept is derived from the fact that any investment of a parent in a subsidiary, whether by advances, guaranty payments, or stock investments, may be deducted only once. If such an investment loss were deducted in the year in which incurred, then it may not be deducted in the year of dissolution, or a double deduction would occur. The primary advantage of consolidated returns, therefore, is to allow the affiliated corporations, which have invested in other affiliates, to deduct the losses of their investments through the operation of the subsidiary corporation, in the year in which these losses are incurred.

Considering the facts of this case in the light of the above, it appears to the

court that to follow plaintiffs' contentions, as to the second stipulated issue, would be to allow a double deduction.

D & A has an unadjusted basis of investment in guaranty payments and advances to Warren City of $175,339.30. D & A availed itself of net operating losses of Warren City (based on D & A's proportionate contribution of net income to the net income of the consolidated group) to the extent of $331,867.90, in 1942 and 1944. Thus, a set-off of this sum against D & A's investment basis leaves no balance deductible by D & A in 1945, the year of dissolution of Warren City. On the other hand, T-W has an investment basis of $801,504.16 in Warren City, and availed itself of $447,713.74 of Warren City's net operating loss in 1942 and 1944. Thus, a set-off of this sum against T-W's basis leaves a balance deductible of $353,790.42. If the Commissioner's computations are used, and from the combined aggregate bases of D & A and T-W ($175,339.30 plus $801,504.16) of $976,-843.46 is subtracted the total net operating loss of Warren City availed of by members of the affiliated group, $779,-581.64, there is only a remaining total balance deductible of $197,261.82. Thus, it is apparent that use of the method contended for by plaintiffs results in an advantage of $156,528.60 of additional deductions. The reason for this advantage is that $156,528.60 of the net operating loss of Warren City previously availed of by D & A is not set-off against any investment basis of D & A in Warren City in the year of dissolution. Thus, this sum represents an amount that is availed of by D & A as a set-off against D & A's profits in the years 1942 and 1944, and then, because D & A did not have a sufficient investment basis in Warren City, is not eliminated from the deductible investment basis of Warren City, and if plaintiffs' contentions are followed, cannot be eliminated from the deductible investment basis of T-W. Therefore, this sum is deducted a second time, by T-W. Thus, the consolidated group gains a real advantage in increased deductions equal to this sum.

The method contended for by the government results in elimination of the entire net operating loss of Warren City, previously availed of, from the total investment basis of members of the consolidated group, prior to any deduction of lost investment in Warren City. This method results in no double deduction, and does not distort the income picture of the consolidated group.

■ One of the purposes of consolidated returns is to avoid any distortion of the net income of the consolidated group. Burnet v. Aluminum Goods Mfg. Co., 1933, 287 U.S. 544, 53 S.Ct. 227, 77 L.Ed. 484. If the method contended for by plaintiffs is applied, the corporate group will be allowed a double deduction of $156,528.60, as shown above, and the net income of the group is distorted. Such a double deduction should not be allowed, for the reasons already stated in the court's decision of the first issue of this case.

Plaintiffs contend that the rule established in the Bush Terminal case, supra, should be applied to the facts of this case, arguing that the Commissioner is obliged to apply this rule because of his acquiescence to the holding of the Tax Court in that case. In Bush Terminal, the Tax Court considered a case somewhat similar to the case at bar. In that case, an affiliated corporation attempted to deduct as a bad debt, the worthless obligation of an affiliated corporation in a year when consolidated returns were not filed by the consolidated group. The Tax Court held that since there had been consolidated returns filed in years previous to the year in which the bad debt became worthless, the plaintiff corporation must subtract the amount of the net operating losses of the affiliate availed of by the plaintiff corporation during the years in which consolidated returns were filed, or a double deduction would occur. The government contended that the plaintiff must apply all the net operating losses of the entire affiliated group against these losses. The Tax Court recognized that to apply the total net operating loss of the affiliate availed of

by the entire group against the bad debt of one other member of the affiliated group would result in an obvious inequity. The Court therefore held that, "Only that part of Railroad's operating losses should be used to reduce petitioner's bad debt deduction which represents a proportion of petitioner's taxable net income to the combined net income of petitioner and Terminal."

Plaintiffs argue that under this Bush Terminal rule only that part of the operating losses of the members of the group should be used to reduce plaintiffs' deductions on the termination of Warren City which represents a proportion of each of plaintiffs' taxable net incomes to the combined net income of the group.

In the Bush Terminal case the Tax Court considered only the plight of one affiliated corporation, against which the Commissioner was attempting to set-off the entire net operating loss previously availed of by the consolidated group. The court held that the amount of net operating loss of the group to be eliminated from the basis of the petitioner in that case should be apportioned to the petitioner, on the basis of the net income contribution of the petitioner to the entire consolidated group net income during the years consolidated returns were filed. It may be, on the facts of that case, that such an apportionment would be the only fair solution of the problem then before the court. However, when the rule enunciated by the Tax Court is applied to the facts of the case at bar, it is obvious, as has been shown above, that a double deduction occurs and that the income picture of the consolidated group is distorted. In this case, the court is not faced with an attempt by the Commissioner to apply the whole net operating loss previously availed of by the consolidated group against the investment basis of any one member of the group. In this case the court is faced with the problem of apportioning the net operating loss, previously availed of, between all members of the investment group in Warren City; and all such members are now before the court and a consolidated return has been filed in the year of dissolution. It is the opinion of this court that the formula applied in Bush Terminal is not applicable to the facts of this case because such application would result in a distortion of net income and a double deduction.

 For the reasons stated above, the court holds that the Commissioner should deduct the total net operating loss previously availed of by D & A and T-W, from the "combined aggregate bases" of these plaintiffs in Warren City, and should then apportion the remainder, representing the balance deductible on dissolution of Warren City, between D & A and T-W in proportion to their respective investments in Warren City. It is the opinion of the court that this method is consistent with this court's holding on the first issue in this case, because it eliminates all distortion of the net income of the consolidated group.

Therefore, an order will be entered dismissing the complaint.