AMBAC INDUSTRIES, INC., FORMERLY KNOWN AS AMERICAN BOSCH ARMA CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1665–70.   Filed February 13, 1973.

*William H. Brayer*, for the petitioner.
*Rufus H. Leonard, Jr.*, and *Steedly Young*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency of $140,676.28 in petitioner's income tax for 1965. Petitioner has conceded all but one of the issues raised in the statutory notice of deficiency.

The disputed issue relates to the computation of petitioner's basis in the stock and debt of its former subsidiary and will require an interpretation of the pre-1966 consolidated return regulations.[1] The specific question to be decided is whether, in computing a parent corporation's loss on the worthlessness of the stock and debt of its subsidiary, the parent must reduce its basis in such stock and debt by the

---

[1] T.D. 6894, 1966–2 C.B. 362, promulgated a new set of consolidated return regulations applicable to taxable years beginning after Dec. 31, 1965, and designated as secs. 1.1502–0 through 1.1502–80, Income Tax Regs. The regulations applicable to taxable years beginning before Jan. 1, 1966, were redesignated as secs. 1.1502–0A through 1.1502–51A. See sec. 1.1502–0, Income Tax Regs.

amount of a net operating loss incurred by the subsidiary in the year of its liquidation.

All of the facts of this case have been stipulated and are found accordingly.

Petitioner was engaged in the manufacture of electronic systems and devices during the years involved in this case. Its principal place of business was in Garden City, N.Y., when it filed the petition herein. Petitioner filed a consolidated Federal income tax return for 1965 with the district director of internal revenue, Brooklyn, New York.

Space Equipment Corp. (hereinafter Space) was a manufacturer of plastic parts for use in the aerospace industry.

On March 31, 1964, petitioner acquired 69,167 shares of the common stock of Space out of the total 72,000 shares outstanding. Later in the same year, petitioner acquired an additional 300 shares, giving it a total of 69,467 shares, or 96.48 percent of Space's stock. These shares of stock cost the petitioner a total of $74,289.31.

Petitioner and Space joined in filing consolidated Federal income tax returns for the calendar years 1964 and 1965.

Petitioner loaned Space a total of $800,000 during 1964 in exchange for promissory notes of Space in like face amount. Petitioner loaned Space an additional $92,899.50 during 1964 and 1965, recorded on the books of petitioner as an intercompany receivable from Space and on the books of Space as an intercompany payable to petitioner. In October and November of 1964, Space made repayments of its indebtedness to petitioner in the total amount of $50,201.

Due to the losses sustained by Space in 1964, the boards of directors of petitioner and Space, at their January 1965 meetings, resolved to cease the operations of Space and proceed to wind up its business. Pursuant to the plan of liquidation thus adopted, Space disposed of its operating assets and ceased business activities. By June 1965, its assets consisted solely of cash and accounts receivable, and by November 1965, all its creditors other than petitioner had been paid in full.

From February to November 1965, Space made liquidating distributions to petitioner in the total amount of $367,442.91. Petitioner treated this amount as a repayment of Space's indebtedness.

Space was dissolved and liquidated as of December 22, 1965. At that time, petitioner had a cost basis in its Space stock of $74,289.31 and a total unpaid balance due from Space, consisting of notes and intercompany accounts receivable, in the amount of $475,255.59.

Space sustained a net operating loss of $153,079.88 for the period March 31, 1964, through December 31, 1964, and a net operating loss of $293,075.58 for the period January 1, 1965, through December 22, 1965. These losses were deducted from the separate taxable income of peti-

tioner in 1964 and 1965 in order to compute the consolidated taxable income for each of the 2 years.

The parties agree that petitioner's investment in Space (both stock and unrepaid loans) became worthless during 1965, that Space sustained the net operating losses specified above, and that the affiliated group consisting of petitioner and Space took the full tax benefit of such losses in computing its consolidated taxable income. They disagree, however, on the amount of the loss which petitioner may recognize with respect to such worthlessness.

Section 1.1502–40–A(a), Income Tax Regs., governs the bad debt loss allowable to petitioner in the circumstances of this case. That section provides, in pertinent part, that "the loss shall be computed subject to the adjustments specified in § 1.1502–35A." Section 1.1502–33A governs the loss allowable to petitioner on account of the Space stock and also refers to section 1.1502–35A for the computation of the loss. The latter section requires that the basis of the indebtedness be reduced by "the excess, if any, of the aggregate of the deductions computed under paragraph (b)(2) * * * of section 1.1502–34A" over the basis of the stock.

Section 1.1502–34A(b)(2) provides for a reduction in the basis of petitioner's investment in Space (both stock and debt) by the sum of:

(i) All losses of * * * [Space] sustained during taxable years for which consolidated income tax returns were made or were required (whether the taxable year 1929 or any prior or subsequent taxable year) after such corporation became a member of the affiliated group and prior to the sale of the stock to the extent that such losses could not have been availed of by such corporation as net loss or net operating loss in computing its net income or taxable income, as the case may be, for such taxable years if it had made a separate return for each of such years * * *

When, as in this case, the adjustment to basis is applied in the context of a liquidation and resulting bad debt loss, the phrase "prior to the sale of the stock" in section 1.1502–34A(b)(2)(i) is to be read as the equivalent of "prior to the time when the debt became worthless for the purposes of deduction." *Bush Terminal Buildings Co.*, 7 T.C. 793, 816–817 (1946), interpreting the same language in the predecessor of section 1.1502–34A(b)(2)(i).

The parties differ on their interpretation of section 1.1502–34A(b)(2)(i). There is no dispute that the amount of Space's net operating loss for 1964 ($153,079.88) is a required adjustment to basis. Petitioner concedes that $74,289.31 of this adjustment must first be applied to reduce the basis of its stock in Space to zero and that the remaining $78,790.57 of the adjustment should be applied to reduce its basis in

the unpaid debt of Space ($475,255.49). It contends, however, that no further adjustment should be made and that it is entitled to a deduction in the amount of $396,464.92.

Respondent maintains, however, that Space's net operating loss in 1965 ($293,075.58) is also a required adjustment to the basis of Space's indebtedness to petitioner, with the result that petitioner's allowable deduction should be limited to $103,389.34.

Petitioner's position is based upon the proposition that the required downward adjustment to basis is limited to the net operating losses of Space "sustained during taxable years * * * prior to" the worthlessness of the indebtedness. It argues that 1965 was not a year *prior* to the worthlessness of the debt of Space and that, consequently, the net operating loss of Space sustained during that year is not a required adjustment. For this reading of section 1.1502–34A(b)(2)(i), petitioner relies on *Henry C. Beck Builders, Inc.*, 41 T.C. 616, 629–633 (1964).

In *Beck Builders*, a parent and subsidiary corporation filed consolidated income tax returns for the fiscal years 1953 through 1957. The affiliation was broken within fiscal 1957, when the common stock of the subsidiary was sold. Prior to the date of that sale, but during fiscal 1957, the subsidiary had redeemed all of its preferred stock which was held by the parent. The issue presented for decision involved the question of the amount of gain which should be recognized by the parent as a result of that redemption.

For the purpose of determining the parent corporation's adjusted basis in the preferred stock of its subsidiary under section 1.1502–34 (b)(2)(i), Income Tax Regs. (now section 1.1502–34A(b)(2)(i), the regulation involved herein, see fn. 1 *supra*), the Commissioner urged this Court to take into account the taxable income and net operating losses of the parent and subsidiary for the fiscal years 1953 through 1957. The argument made on behalf of the parent corporation in that case—identical to the argument of petitioner herein—was that only the fiscal years 1953 through 1956 should be considered in computing the required adjustment to basis, because 1956 was the last taxable year prior to the redemption of the preferred stock.

We accepted the argument made on behalf of the parent corporation and disregarded the year of the redemption in computing the adjustment under section 1.1502–34A(b)(2)(i). Elimination of fiscal year 1957 meant a smaller downward adjustment to the parent's basis in the preferred stock of the subsidiary and, consequently, a smaller recognizable gain to the parent as a result of the redemption.

In urging us to disregard the year of the liquidation in this case just

as we disregarded the year of the redemption in the *Beck Builders* case, petitioner itself disregards a crucial distinction between the two situations. In *Beck Builders*, the redemption of the preferred stock did not break the affiliation between the parent and subsidiary corporation. Thus, we noted in that case that the redemption of the preferred stock—

was not the occasion for the filing of a new return * * * and did not otherwise bring that taxable year [1957] to a close. * * * At the time of the redemption * * * [the subsidiary's] last prior taxable year was clearly its 1956 taxable year. [See 41 T.C. at 632.]

By way of contrast, the liquidation in the present case broke the affiliation between petitioner and Space, terminated the affiliated group, and brought Space's taxable year to a close. Secs. 1.1502–13A(c) and (g) and 1.1502–31A(e). The significance of this distinction is highlighted by our reference in *Beck Builders* to the impact of the sale of the common stock and by the fact that it was unnecessary in that case for us to resolve the question of adjustment to the basis of that stock in respect of net operating loss deductions for, and carryovers to, the year of such sale because the parent's basis in the common stock had been reduced to zero. See 41 T.C. at 632.

The distinction is further accentuated by contrasting the treatment, on a consolidated return, of gain from the receipt of cash in redemption of the stock of a member of an affiliated group in an amount in excess of earnings and profits, and a worthless intercompany bad debt. The former situation gives rise to a taxable event and the gain is recognized on the consolidated return. *Henry C. Beck Builders, Inc., supra;* see sec. 1.1502–37A(a)(1)(ii), Income Tax Regs.; 8A Mertens, Law of Federal Income Taxation, sec. 46.47, fn. 58. In the latter situation, no deduction is allowable during any consolidated return period, except in the case of an intercompany bad debt "resulting from the bona fide termination of the business and operations" of the debtor affiliate. See sec. 1.1502–40A(a), Income Tax Regs.

In view of the foregoing, *Beck Builders* is clearly distinguishable.

In the final analysis, the validity of petitioner's contention depends upon when the affiliation between Space and petitioner was broken and when Space's indebtedness to petitioner became "worthless for purposes of deduction." See *Bush Terminal Buildings Co., supra.* There is no doubt that the affiliation was not broken until Space was dissolved on December 22, 1965, and petitioner does not contend otherwise. See *Joseph Weidenhoff, Inc.,* 32 T.C. 1222, 1233 (1959). We think that "for purposes of deduction" the indebtedness of Space to petitioner became worthless at the same time. The exception contained in section 1.1502–

40A(a), Income Tax Regs., *supra*, simply provides that the "termination of the business and operations" is the *cause* of the loss, with the *time* for taking the loss into account postponed until the debtor-affiliate ceases to be a member of the affiliated group. As a consequence, the period January 1, 1965, through December 22, 1965, during which Space sustained the net operating loss of $293,075.58, constituted a separate taxable year "prior to" the worthlessness of the indebtedness for the purpose of computing the required adjustment under section 1.1502–34A(b)(2)(i).[2]

Our interpretation comports with the obvious purpose of the regulation in question, while the interpretation suggested by petitioner would confound that purpose. The theory of the adjustment prescribed in section 1.1502–34A(b)(2)(i) is that a parent corporation, after it has used its subsidiary's net operating loss to offset its own taxable income in a consolidated return year, should not be again entitled to deduct the same loss when it sells or otherwise disposes of its investment in the subsidiary. See *McLaughlin* v. *Pacific Lumber Co.*, 293 U.S. 351 (1934); *Charles Ilfeld Co.* v. *Hernandez*, 292 U.S. 62 (1934); *Greif Cooperage Corp.* v. *Commissioner*, 85 F. 2d 365 (C.A. 3, 1936), affirming 31 B.T.A. 374 (1934); *Commissioner* v. *National Casket Co.*, 78 F. 2d 940 (C.A. 3, 1935); *Commissioner* v. *Emerson Carey Fibre Products Co.*, 70 F. 2d 990 (C.A. 10, 1934); *United States* v. *Lakewood Engineering Co.*, 70 F. 2d 887 (C.A. 6, 1934); *Bush Terminal Buildings Co.*, *supra; Jordahl & Co.*, 35 B.T.A. 1136 (1937); *Denton & Anderson Co.* v. *Kavanagh*, 164 F. Supp. 372, 381–384 (E.D. Mich. 1958), affirmed per curiam 265 F. 2d 930 (C.A. 6, 1959). Our interpretation also implements the recent mandate of *United States* v. *Skelly Oil Co.*, 394 U.S. 678, 684 (1969), which admittedly did not involve the consolidated return area, where the Supreme Court stated "the Code should not be interpreted to allow * * * [the taxpayer] 'the practical equivalent of double deduction,' *Charles Ilfeld Co.* v. *Hernandez*, 292 U.S. 62, 68."

We conclude that the net operating loss sustained by Space in the year of its liquidation must be included in calculating the reduction in basis under section 1.1502–34A(b)(2)(i).

*Decision will be entered for the respondent.*

---

[2] Compare Space's period Mar. 31, 1964, through Dec. 31, 1964, during which it sustained the net operating loss of $153,079.88. Petitioner's acquisition of Space's stock on Mar. 31, 1964, commenced their affiliation and brought Space's pre-affiliation taxable year to a close. Secs. 1.1502–13A (b) and (g) and 1.1502–31A(e). Space's period Mar. 31, 1964, through Dec. 31, 1964, thus constituted a separate taxable year "after [Space] became a member of the affiliated group" and the net operating loss it sustained during that period is concededly a required adjustment to basis under sec. 1.1502–34A(b)(2)(i).