**AMBAC INDUSTRIES, INC. (formerly American Bosch Arma Corporation), Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 135, Docket 73-1775.

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1973.

Decided Nov. 1, 1973.

William H. Brayer, Jr., New York City, for appellant.

Donald H. Olson, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before KAUFMAN, Chief Judge, and LUMBARD and TIMBERS, Circuit Judges.

KAUFMAN, Chief Judge:

Although we agree with the result reached by the Tax Court, unfortunately we cannot abide by the course taken to arrive at that decision. Accordingly, we are constrained to enter the labyrinthine structured tax laws, knowing full well the difficult and tortuous path that may lie ahead. Learned Hand so eloquently observed:

> In my own case the words of such an act as the Income Tax, for example, merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception . . . leave in my mind only a confused sense of some vitally important, but successfully concealed purport, which it is my duty to extract, but which is within my power, if at all, only after the most inordinate expenditure of time.[1]

In its consolidated federal income tax return for the taxable year ending December 31, 1965, AMBAC Industries, Inc. reported a loss on its investment in stock and debt of its subsidiary, Space Equipment Corporation, in the amount of $396,464.92. In computing this loss, AMBAC failed to reduce the basis of its aggregate investment in Space by the sum of $293,075.58, the net operating loss sustained by Space in 1965, which amount AMBAC had also used to offset its own income through consolidation. In 1969, the Commissioner of Internal Revenue asserted a deficiency of $140,676.28 against AMBAC in order to prevent this alleged double deduction or "double tax benefit" gained through AMBAC's use of Space's 1965 net operating loss both to offset AMBAC's separate income and to increase its worthless investment deduction. AMBAC petitioned the Tax Court for a redetermination of this deficiency and the Court sustained the Commissioner's determination in full. Since we find nothing in the Code or the governing regulations which authorizes the double deduction sought by AMBAC, and in fact construe those regulations to prohibit such deduction, we affirm.

I

The facts as stipulated below[2] are quite straightforward. AMBAC is a manufacturer of automotive parts and electronic guidance systems and devices. During 1964,[3] AMBAC acquired 96.48% of the outstanding common stock of Space, a company engaged in the manufacture and sale of plastic parts for use in the aerospace industry. The total cost of the stock acquisition was $74,289.31. Thereafter, AMBAC loaned Space $892,899.50, of which a total of $50,201 was repaid by Space in October and November of 1964.

From March 31, 1964, to December 31, 1964, Space sustained a net operating loss of $153,079.88, which AMBAC offset against its income in computing the consolidated taxable income of the affiliated group for the taxable year ending December 31, 1964. Because of this loss, however, the board of directors of AMBAC and Space, at their January, 1965 meetings, resolved to discontinue the operations of Space and proceed to wind up its business. Pursuant to the plan of liquidation then adopted, Space disposed of its operating assets and ceased business activities. By June, 1965, its assets consisted solely of cash and accounts receivable and by November, 1965, all its creditors other than AMBAC had been paid in full. AMBAC received a total repayment of $367,442.91 from Space during 1965.

1. The Spirit of Liberty: Papers and Addresses of Learned Hand (I. Dilliard ed. 1960) at 213.

2. The Tax Court opinion is reported at 59 T.C. 670 (1973).

3. AMBAC acquired the bulk of the Space shares, 69,167 of the total outstanding of 72,000, on March 31, 1964. An additional 300 shares were purchased subsequently in 1964.

Space was liquidated on December 22, 1965. At that time AMBAC's cost basis for its Space stock remained $74,289.31, while the outstanding balance on its loans to Space totaled $475,255.59. In reporting this investment loss on its 1965 consolidated federal income tax return, AMBAC reduced its aggregate investment of $549,544.90 by Space's 1964 net operating loss of $153,079.88 but failed to make a similar adjustment for Space's 1965 net operating loss of $293,075.58, which sum had already been utilized to reduce consolidated taxable income on the tax return filed jointly by AMBAC and Space for that year. As a result of this omission, the Commissioner assessed the contested deficiency. We now turn to the Tax Court's analysis of the Commissioner's determination.

## II

■ Before the Tax Court, all parties agreed that Treas.Reg. § 1.1502—34A(b)(2)(i)[4] governed the computation of AMBAC's basis in the stock and debt of Space for purposes of determining the amount of AMBAC's worthless investment deduction. This regulation provides that AMBAC's basis in the stock and debt of Space must be reduced by the sum of:

all losses of such issuing corporation (Space) sustained during taxable years for which consolidated income tax returns were made or were required . . . after such corporation became a member of the affiliated group and prior to the sale of the stock (of the affiliate) . . . .

Moreover, where, as in this case, the taxable event requiring an adjustment in basis under § 1.1502–34A(b)(2)(i) is a worthless investment deduction and not a sale of the affiliate's stock, the regulation has been construed to read:

all losses of the issuing corporation (Space) sustained during taxable years for which consolidated income tax returns were made or were required . . . after such corporation became a member of the affiliated group and *prior to the time when the investment became worthless for the purposes of deduction.* (emphasis added)

*See* Bush Terminal Buildings Co. v. Commissioner, 7 T.C. 793, 816–817 (1946).

In applying this regulation, the Tax Court, following an earlier decision in Henry C. Beck Builders, Inc. v. Commissioner, 41 T.C. 616, 629–633 (1964), held that AMBAC must account for all losses sustained by Space "during taxable years . . . prior to the time when the investment became worthless for the purposes of deduction." Accordingly, the crucial question before the Tax Court concerned the precise time that AMBAC's investment in Space became worthless for purposes of deduction. If, as the taxpayer urged, that event occurred during 1965, then the last taxable year prior to that time would have been 1964 and AMBAC could properly ignore Space's 1965 net operating loss in computing its worthless investment deduction. If, as the Commissioner contended, the investment became worthless for purposes of deduction upon the liquidation of Space on December 22, 1965, then, since that liquidation automatically terminated Space's taxable year,[5] the net operating loss suffered by Space in 1965 would have been sustained in a taxable year (January 1—December 22, 1965) prior to the time the investment became worthless for purposes of deduction on December 22, 1965. This analysis would support the deficiency asserted by the Commissioner.

4. T.D. 6894, filed September 7, 1966, promulgated new consolidated return regulations under I.R.C. § 1.1502: Treas.Reg. §§ 1.1502–0—1.1502–80. The new regulations are applicable to taxable years beginning after December 31, 1965. The old regulations, applicable to taxable years beginning before January 1, 1966, were redesignated as §§ 1.1502–0A—1.1502–51A. Treas.Reg. § 1.1502–32 is similar though not identical to § 1.1502–34A.

5. Treas.Reg. § 1.1502–31A(e).

To resolve this conundrum, the Tax Court turned to Treas.Reg. § 1.1502–40A(a) which governs the deductibility of a worthless investment in a member of an affiliated group (Space) by another member of that group (AMBAC). This regulation states:

> No deduction shall be allowed during a consolidated return period to any member of the affiliated group on account of worthlessness . . . of any obligation of any other corporation *which was a member of the group as of the last day of the taxable year or which was liquidated by the group during such year, except as a loss resulting from a bona fide termination of the business and operations of such other corporation, whether in liquidation or otherwise.* (emphasis added)

The Tax Court, without reference to the language of the regulation or to any prior decisions elucidating its meaning, interpreted § 1.1502–40A(a) as prohibiting a worthless investment deduction until the affiliation between the debtor and creditor corporations had been severed. The Court accordingly concluded that the specific month in 1965 in which there was a "bona fide termination of the business and operations of [Space]" had little importance for the investment loss was not deductible by AMBAC until the affiliation was terminated by Space's liquidation on December 22, 1965. We cannot agree with this strained interpretation of § 1.1502–40A(a).

### III

The emphasized portion of § 1.1502–40A(a) clearly indicates that so long as the investment loss resulted from "a bona fide termination of the business and operations of (Space)," that loss could be deducted by AMBAC whether Space "was a member of the affiliated group on the last day of the taxable year or . . . was liquidated by the group during such year." Disaffiliation is simply not the *sine qua non* for permissible deduction. Accordingly, although in this instance Space was liquidated during the group's 1965 taxable year, we read § 1.1502–40A(a) as permitting AMBAC to deduct its worthless investment in Space on its 1965 consolidated tax return even if Space had not been formally liquidated until January 1, 1966. Deductibility pursuant to that section does not turn on the existence of an empty corporate shell, but rather on the bona fide termination of the business and operations formerly contained therein.

Although we agree with AMBAC, therefore, that its investment in Space became worthless for purposes of deduction before December 22, 1965, either by June or certainly by November of that year, we are not persuaded to reverse. We arrive at this conclusion because we believe the Tax Court erred by perpetuating an erroneous interpretation of Treas.Reg. § 1.1502–34A(b)(2)(i) in adhering to its opinion in Henry C. Beck Builders, Inc. v. Commissioner, *supra*.

In *Beck*, the taxpayer, in computing its gain on the redemption of a subsidiary's preferred stock within a month of the start of the subsidiary's 1957 taxable year, did not reduce its basis in the stock by the net operating loss sustained by the subsidiary prior to the redemption. The Commissioner asserted a deficiency against Beck for failure to account for the subsidiary's net operating losses for the taxable years 1954, 1955, 1956 and all of 1957. The Tax Court affirmed this determination as to the net losses incurred in 1954–1956 but held that since redemption of the subsidiary's preferred stock did not terminate the subsidiary's taxable year, 1957 was not a "taxable year . . . prior to the [redemption] of the stock." Thus, the Court concluded that Treas.Reg. § 1.1502–34A(b)(2)(i) did not require taxpayer to account for any part of the subsidiary's 1957 net operating loss.

In so holding, however, the *Beck* Court overlooked what we believe to be a more plausible interpretation of § 1.1502–34A(b)(2)(i). Although the Tax Court assumed that the phrase "after such corporation became a member of

the affiliated group and prior to the sale of the stock" necessarily modified *"taxable years* for which consolidated income tax returns were made or were required," that language could properly be construed as modifying *"losses* of the issuing corporation." Following this latter construction, the taxpayer in *Beck* would have been required to reduce its basis in the subsidiary's preferred stock by the net operating loss sustained by the subsidiary during that portion of 1957 preceding the redemption, as well as in the prior taxable years of 1954–1956. Only in this way would the taxpayer be fully deprived of the use of its subsidiary's net operating losses to gain a double tax benefit—(1) to offset the taxpayer's separate income through consolidation; (2) to reduce the taxpayer's gain or increase its loss upon the sale of the subsidiary's stock at a price which reflects those losses.

We believe this interpretation of § 1.-1502–34A(b)(2)(i) is a sensible one because "the taxable year for which a consolidated return was made or required" —always the full twelve month period of the parent's taxable year [6]—will invariably cover a period in which losses sustained by the subsidiary cannot be used to achieve the double tax benefit that the regulation was designed to prevent. In the year affiliation commences, for example, any losses sustained by the subsidiary within that taxable year but prior to actual affiliation will not be available to the parent to offset its separate income through consolidation.[7] Similarly, where, as in *Beck*, the sale of the subsidiary's stock occurs during the taxable year, any losses incurred by the subsidiary following the sale could not possibly have been reflected in the sale price. Accordingly, to exclude losses sustained during these periods from

which a double tax benefit is unobtainable, the regulation states that only "losses of the issuing corporation sustained . . . after such corporation became a member of the affiliated group and prior to the sale of the stock (of the affiliate)" must be accounted for in computing basis.

We are further persuaded to resolve any ambiguity in the language of Treas. Reg. § 1.1502–34A(b)(2)(i) in a manner that does not accord with the *Beck* interpretation because of the recently repeated admonition by the Supreme Court that "the Code should not be interpreted to allow (the taxpayer) 'the practical equivalent of a double deduction,' Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 68 [54 S.Ct. 596, 598, 78 L.Ed. 1127] (1934)." United States v. Skelly Oil Co., 394 U.S. 678, 685, 89 S.Ct. 1379, 1383, 22 L.Ed.2d 642 (1969).[8] We are of the view, accordingly, that the Tax Court's interpretation of § 1.1502–·34A(b)(2)(i) in *Beck* was incorrect and should not have been followed in the instant case.

▮▮ Applying the proper construction of the regulation to the facts of this case, AMBAC was required to reduce its worthless investment deduction by the net operating loss incurred by Space prior to the time its investment in Space became worthless for purposes of deduction. Incorporating the criteria imposed by Treas.Reg. § 1.1502–40A (a), this reduction must equal the loss sustained by Space prior to the "bona fide termination of (its) business and operations." Since we understand "bona fide termination" to mean the point at which the corporation ceased to earn income or incur expenses, we find that the total net operating loss incurred by Space in 1965 must necessarily have been sustained prior to the "bona fide

---

6. Treas.Reg. §§ 1.1502–2A(c),–12A(a).

7. Treas.Reg. § 1.1502–13A(d).

8. *See also* Treas.Reg. § 1.1016–6, which states:
   Adjustments must always be made to eliminate double deductions or their equiva-

lent. Thus, in the case of the stock of a subsidiary company, the basis thereof must be properly adjusted for the amount of the subsidiary company's losses for the years in which consolidated returns were made.

termination of (its) business and operations" and the deficiency asserted against AMBAC, therefore, was correct.

Accordingly, the judgment of the Tax Court is affirmed.