ARNOLD W. SHAVER, JR. AND LOUANN SHAVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shaver v. Commissioner
Docket No. 3656-92
United States Tax Court
T.C. Memo 1993-619; 1993 Tax Ct. Memo LEXIS 626; 66 T.C.M. (CCH) 1766; December 23, 1993, Filed *626 Pro se: Arnold W. Shaver, Jr. and Louann Shaver. For respondent: Russell A. Acree III. SWIFT
SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioners' joint Federal income taxes and additions to tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1985
$ 11,058
$    --
$ 553 *
1987
19,558
1,760
--
--
1988
93,356
--
--
--
Additions to Tax
Sec. Sec. Sec. Year
6653(a)(1)(A)
6653(a)(1)(B)
6661
1985
$    --
--
$     --
1987
978 *
4,676
1988
4,668
--
23,339
* 50 percent of the interest due on the portion of the
underpayment attributable to negligence.
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After settlement, the primary issues remaining for decision are: (1) The amount of Arnold W. Shaver, Jr.'s (petitioner) tax basis in the stock and indebtedness of Fotostop, Inc. (Fotostop), a small business corporation (S corporation); (2) whether petitioner is *627 entitled to bad debt deductions with respect to loans made to Fotostop; and (3) whether petitioners are entitled to a deduction with respect to a loss incurred on the sale of their personal residence. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in San Antonio, Texas, at the time the petition was filed. On July 6, 1982, Fotostop was incorporated in the State of Oklahoma. Fotostop was the corporate general partner of a limited partnership named Fotostop Tulsa, Ltd. (the partnership), which partnership was engaged in owning and operating 1-hour photographic film developing and printing laboratories in Tulsa, Oklahoma. From the time of Fotostop's incorporation in 1982, until the end of its 1988 taxable year, Fotostop's shareholders elected to have Fotostop treated as an S corporation. Fotostop's taxable years began on February 1 and ended on January 31 of each year, with the exception of its last 2 taxable years which were short taxable years which began respectively on February 1, 1987, and ended on December 31, 1987, and on January 1, 1988, and ended on August 31, 1988. Between July 6, 1982, and January 31, 1984, petitioner owned *628 18.996 percent of the outstanding stock of Fotostop. Sometime late in 1984 or early 1985, petitioner's stock interest in Fotostop increased to 33.33 percent. The total cash investment of all of the shareholders in Fotostop was $ 4,255. Petitioner, however, apparently invested no cash in Fotostop, and petitioner's tax basis in his stock in Fotostop therefore was zero. In October of 1983, petitioner made a personal guarantee of a $ 96,000 loan obtained by Fotostop from the United Bank of Texas. During the taxable years indicated, petitioner made cash loans to Fotostop, as follows: Fotostop's
Cash Loaned by
Taxable Year Ending
Petitioner to Fotostop
Jan. 31, 1985
$ 30,000
Jan. 31, 1986
40,726
Dec. 31, 1987
24,000
Petitioner's Total Cash Loans
$ 94,726
The loan of $ 24,000 made by petitioner to Fotostop during Fotostop's taxable year ending December 31, 1987, was made by petitioner by way of a payment to the United Bank of Texas in partial performance of the guarantee petitioner had made with respect to Fotostop's 1983 loan from the United Bank of Texas. On August 2, 1984, Fotostop repaid to petitioner $ 10,000 on the loan it had received from petitioner during *629 its taxable year ending January 31, 1985. On February 28, 1986, Fotostop repaid to petitioner an additional $ 25,589 on the loans it had received from petitioner. The $ 59,137 balance on petitioner's loans to Fotostop remains outstanding. On July 1, 1988, the partnership was dissolved under an agreement between Fotostop and the partnership's limited partners. Also, on or about August 31, 1988, Fotostop was dissolved. On November 4, 1985, petitioners purchased a house and property located at 3843 Morgans Creek, San Antonio, Texas. Beginning in late 1987, while petitioners continued residing in the house, petitioners attempted to sell or rent the house. Petitioners sold the house and property in May of 1988, incurring a $ 38,950 loss on the sale. On January 5, 1989, petitioner filed in the U.S. Bankruptcy Court for the Western District of Texas (bankruptcy court) a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On April 25, 1989, the bankruptcy court granted petitioner a discharge under chapter 7 of the Bankruptcy Code. Under the discharge, petitioner was discharged from any further liability on his guarantee of the 1983 loan Fotostop had obtained from *630 the United Bank of Texas. Fotostop incurred net operating losses in each of its taxable years which losses (due to Fotostop's status as an S corporation and subject to the sharesholders' tax bases in their stock and indebtedness of Fotostop) passed through to Fotostop's shareholders. Petitioner's pro rata share of Fotostop's net operating losses for the years indicated is as follows: Fotostop's
Petitioner's Pro Rata Share of
Taxable Year Ending
Fotostop's Net Operating Losses
Jan. 31, 1983
$  2,913
Jan. 31, 1984
12,314
Jan. 31, 1985
24,638
Jan. 31, 1986
26,338
Jan. 31, 1987
53,284
Dec. 31, 1987
47,565
Aug. 31, 1988
12,606
On petitioner's Federal income tax returns for 1983 through 1986, petitioner claimed and was allowed as pass-through ordinary loss deductions the full amount of his pro rata share of Fotostop's net operating losses for each of Fotostop's taxable years ending in 1983 through 1986. On November 21, 1988, petitioners' 1987 joint Federal income tax return was filed. On that return, petitioner claimed an ordinary loss deduction of $ 53,284 with respect to the pass-through of petitioner's share of Fotostop's net operating loss with respect to Fotostop's *631 taxable year ending January 31, 1987, and petitioner also claimed an ordinary bad debt deduction of $ 39,000 with respect to the loans petitioner had made to Fotostop. On April 17, 1989, petitioners' 1988 joint Federal income tax return was timely filed. On that return, petitioner claimed an ordinary bad debt deduction of $ 24,000 with respect to the $ 24,000 payment petitioner made in 1987 on his guarantee of Fotostop's 1983 loan from the United Bank of Texas, and petitioners claimed an ordinary loss deduction of $ 38,950 with respect to a loss on the sale of their house. Also in April of 1989, petitioners timely filed an amended 1985 joint Federal income tax return, in which petitioners claimed a $ 32,765 net operating loss carryback from 1988 (primarily due to the $ 38,950 ordinary loss deduction claimed with respect to the loss on the sale of their house) and a refund arising therefrom of $ 11,058, which claim respondent apparently allowed. On subsequent audit of petitioners' 1987 and 1988 joint Federal income tax returns, respondent determined that petitioner did not have a tax basis in the stock and indebtedness of Fotostop that would support petitioner's claimed $ 53,284 *632 pass-through loss arising from Fotostop's net operating loss for 1987, that petitioner was not entitled to the claimed bad debt deductions with respect to any of petitioner's loans to Fotostop, that petitioners were not entitled to a deduction relating to the loss on the sale of their house, and that petitioners were therefore not entitled to a net operating loss carryback from 1988 to 1985. OPINION Under section 1366, S corporation losses and deductions are passed through to the shareholders. The total amount, however, of pass-through losses and deductions that can be properly claimed by a shareholder of an S corporation is limited under section 1366(d) to the sum of the shareholder's adjusted basis in the stock of the corporation and the shareholder's adjusted basis in indebtedness owed by the corporation to the shareholder. [1]
*633 If in a particular tax year a shareholder does not have a sufficient tax basis in the stock and indebtedness of an S corporation to support the pass-through to the shareholder of the shareholder's entire pro rata share of the S corporation's losses, then the portion of the losses that is not passed through to the shareholder in that year is carried over to a subsequent year until the shareholder has a sufficient tax basis in the stock and indebtedness of the S corporation to support the losses. Sec. 1366(d)(2). Generally, in order to qualify as "indebtedness" under section 1366(d), the indebtedness of the S corporation to the shareholder must have arisen as a result of an actual economic outlay by the shareholder. Harris v. United States, 902 F.2d 439, 443 (5th Cir. 1990); Estate of Leavitt v. Commissioner, 90 T.C. 206, 217 (1988), affd. 875 F.2d 420 (4th Cir. 1989); Underwood v. Commissioner, 63 T.C. 468, 476 (1975), affd. 535 F.2d 309 (5th Cir. 1976); Perry v. Commissioner, 54 T.C. 1293, 1296 (1970), *634 affd. per order 27 AFTR 2d 71-1464, 71-2 USTC par. 9502 (8th Cir. 1971). A shareholder's guarantee of loans to an S corporation does not constitute an economic outlay under section 1366(d) until the shareholder is required to make a payment on the guarantee. Harris v. United States, supra at 445; Estate of Leavitt v. Commissioner, supra at 217-218. But see Selfe v. United States, 778 F.2d 769, 774 (11th Cir. 1985). A shareholder's tax basis in the stock and indebtedness of an S corporation is to be adjusted or reduced under section 1367 by, among other things, the amount of the S corporation's losses that pass-through to the shareholder's individual tax return as loss deductions and is also to be reduced by the amount of repayment of the indebtedness by the S corporation to the shareholder. See Klein v. Commissioner, 75 T.C. 298 (1980). A shareholder's tax basis in the stock or indebtedness of an S corporation may, however, never be adjusted below zero. Sec. 1367. Under section 166, taxpayers may claim *635 with respect to bad debts either ordinary or capital deductions, depending on whether the bad debts are business bad debts or nonbusiness bad debts. Bad debt deductions, however, are also limited (as are pass-through losses under section 1366 as explained above) by the amount of the taxpayer's tax basis in the indebtedness, and the section 1367 adjustments or reductions to basis are made before the tax basis is calculated that is available to support claimed bad debt deductions under section 166. Abdalla v. Commissioner, 69 T.C. 697, 705 (1978), affd. 647 F.2d 487 (5th Cir. 1981); cf. sec. 1367(b)(3); Ambac Industries, Inc. v. Commissioner, 487 F.2d 463, 467 (2d Cir. 1973), affg. 59 T.C. 670 (1973); sec. 1.1016-6(a), Income Tax Regs.
Between October of 1983 and June of 1984, petitioner claims to have made additional cash loans to Fotostop in the amount of $ 100,000, and petitioner claims that such additional loans increased petitioner's tax basis in the indebtedness of Fotostop, and petitioner accordingly claims entitlement to additional pass-through losses for 1987 *636 relating to Fotostop. Petitioner also claims that his tax basis in the indebtedness of Fotostop should be increased by the $ 96,000 guarantee he made on Fotostop's loan from the United Bank of Texas. Further, petitioner claims that the balance due on his loans to Fotostop became worthless in 1987 and in 1988 and that he is entitled to ordinary business bad debt deductions with respect thereto, apparently regardless of his tax basis therein. Respondent counters that petitioner has not substantiated the alleged additional $ 100,000 in loans to Fotostop, that petitioner had no additional tax basis in the stock or indebtedness of Fotostop that would entitle petitioner to a pass-through loss for 1987, and that the business bad debt deductions petitioner claims under section 166 are not allowable because, among other things, petitioner has no remaining tax basis in his loans to Fotostop as a result of the pass-through losses petitioner claimed and respondent has allowed in prior years relating to Fotostop, which caused reductions in petitioner's tax basis in the indebtedness of Fotostop to zero. Petitioners have failed to substantiate that petitioner made any loans to Fotostop in excess *637 of what respondent has allowed. The $ 100,000 of additional loans that petitioner alleges he made to Fotostop are not supported by any notes, cancelled checks, or corporate records. The mere guarantee by petitioner of Fotostop's 1983 loan from the United Bank of Texas did not constitute an actual economic outlay and is not includable in petitioner's tax basis in the indebtedness of Fotostop. See Harris v. United States, supra at 445; Estate of Leavitt v. Commissioner, supra at 217-218. [2]
*638 With respect to the bad debt deductions claimed by petitioner for 1987 and 1988, petitioner seeks to deduct as bad debts under section 166 loans to Fotostop with respect to which petitioner had no tax basis because petitioner's tax basis had already been applied to support the pass-through losses allowed to petitioner under section 1366. The claimed bad debt deductions for 1987 and 1988 are disallowed. See Abdalla v. Commissioner, supra at 487; cf. sec. 1367(b)(3); Ambac Industries, Inc. v. Commissioner, supra at 467; sec. 1.1016-6(a), Income Tax Regs.
Losses attributable to the sale of a personal residence are nondeductible personal losses. Sec. 1.262-1(b)(4), Income Tax Regs. Petitioners argue, however, that prior to its sale, the house and property at 3843 Morgans Creek, San Antonio, Texas, were available for rent and constituted income-producing property and that they are therefore entitled to an ordinary deduction for the loss on the sale. Sec. 1.165-9(b), Income Tax Regs. On the facts before us, petitioners' unsuccessful efforts to rent the house prior to its sale, however, did not qualify the house as income-producing property. *639 Morgan v. Commissioner, 76 F.2d 390 (5th Cir. 1935); McAuley v. Commissioner, T.C. Memo. 1976-276. We hold for respondent on this issue. Petitioners argue that any Federal income tax deficiency for 1985 was discharged in bankruptcy. The Tax Court, however, lacks jurisdiction to decide whether petitioners' tax deficiency was discharged in bankruptcy. See Neilson v. Commissioner, 94 T.C. 1, 9 (1990); Graham v. Commissioner, 75 T.C. 389, 399 (1980). [3]
Respondent determined that petitioners are *640 liable for additions to tax under sections 6651(a)(1) for 1987, 6653(a)(1) and (2) for 1985, 6653(a)(1)(A) and (B) for 1987 and 1988, and 6661 for 1987 and 1988. Petitioners have the burden of proof to show that respondent erroneously determined these additions to tax. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners have not offered any evidence, nor made any separate arguments regarding these additions to tax. We therefore sustain respondent's determination that petitioners are liable for these additions to tax. Decision will be entered under Rule 155. Footnotes
1. Sec. 1366(d)(1) provides as follows: (d) Special Rules for Losses and Deductions. -- (1) Cannot exceed shareholder's basis in stock and debt. -- The aggregate amount of losses and deductions taken into account by a shareholder under subsection (a) for any taxable year shall not exceed the sum of -- (A) the adjusted basis of the shareholder's stock in the S corporation (determined with regard to paragraph (1) of section 1367(a) for the taxable year), and (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder (determined without regard to any adjustment under paragraph (2) of section 1367(b)↩ for the taxable year).
2. As noted, petitioner in 1987 made a $ 24,000 payment on the guarantee of Fotostop's loan from the United Bank of Texas, and petitioner therefore had sufficient basis to support a pass-through ordinary loss deduction from Fotostop in the amount of $ 24,000 for 1987. Petitioner, however, also received a $ 25,589 repayment on Fotostop's indebtedness to him during Fotostop's taxable year ending January 31, 1987. Because petitioner had no remaining basis in the indebtedness of Fotostop at the time of the $ 25,589 repayment, the full $ 25,589 repayment constitutes income to petitioner for 1987 and offsets the $ 24,000 pass-through loss. See Cornelius v. Commissioner, 494 F.2d 465, 470 (5th Cir. 1974), affg. 58 T.C. 417 (1972). Although the $ 25,589 of additional income exceeds the $ 24,000 pass-through loss by $ 1,589, because respondent has not asserted a claim for an increased deficiency, we do not charge this additional $ 1,589 to petitioner. Sec. 6214(a). See also Estate of Petschek v. Commissioner, 81 T.C. 260, 271-272 (1983), affd. 738 F.2d 67↩ (2d Cir. 1984).
3. We note, however, that because petitioner's bankruptcy petition was filed on January 5, 1989, less than 3 years after April 15, 1986 (the date on which petitioners' 1985 joint Federal income tax return was due), petitioners' deficiency for 1985 appears not to have been discharged in bankruptcy. See 11 U.S.C. secs. 507(a)(7)(A)(i), 523(a)(1)(A), and 727(b) (1988)↩.